DANIEL, J.
I think it _is quite clear, that the Circuit court committed no error in overruling the motion to arrest the judgment. Had the fact, upon Ihe assumption of which the motion was grounded, namely, that the parties defendant to the action • ‘were residents of other and different states than Virginia,” been fully proved, it would have presented no reason for arresting the judgment. No question of jurisdiction arising upon such supposed fact could be made, except by plea in abatement offered before the defendants had pleaded in bar. Code, ch. 171, $ 19, p. 648.
It seems to me, also, free from serious doubt, that we are precluded, by the state of the record, from reviewing the action of the Circuit court in overruling the motion for a new trial, on the score of the verdict being contrary to the evidence. In the bill of exceptions to the judgment of the court overruling this motion, there is no certificate of the facts proved, or of the evidence given on the trial; the bill is silent as to the facts and evidence on which the verdict was founded, and makes no direct reference to the only bill of exceptions in which any portion of said facts or evidence is certified, namely, the bill of exceptions to the ruling of the court, refusing to give certain instructions *prayed for by the plaintiffs in error, and giving other instructions. It is true, that in the first mentioned bill of exceptions, the motion to set aside the verdict is stated as being for the causes: “1st. That the verdict was contrary to the evidence: 2d. That the instructions given by the court were erroneous: And 3d. On newly discovered evidence.” And it is argued, that as the only instructions of the court, of which mention is made in the cause, are contained in a bill of exceptions which has a certificate of the evidence on which the motions of the parties and the rulings of the court, in regard to the instructions, were founded, there arises a necessary implication of an intention to refer to said certificate as a means not only of testing the correctness of the rulings of the court in regard to the instructions, but of determining also whether the verdict was or was not contrary to the evidence. I do not perceive the necessity of such an implication ; but, were we to concede that there was the implied reference contended for, Ido not think the concession would be of any avail to the plaintiffs in error. By such a reference merely, the certificate of the evidence on which the instructions were asked, could not be substituted for the certificate of the facts or evidence in the cause, which it is necessary, for a party complaining of a verdict, to obtain, in order to have a judgment overruling his motion to set aside a verdict as contrary to the evidence, reviewed in an appellate court. In a bill of exceptions to the ruling of a court refusing to give instructions, it is only necessary for the exceptor to set out so much of the evidence, or to state the tendency of so much of the evidence as is essential to show the relevancy' and applicability of the instructions to the case. To such an extent only-does such a bill of exceptions generally undertake to give a history of the proofs in the cause. ®It may, and sometimes does set out fully all the evidence of either side, down to the period of the ruling of the court, objected to; yet, as instructions may be, and often are prayed for, and given or refused before the testimony is closed, such a bill of exceptions cannot, of itself merely, be relied on as a complete statement of all the facts or all the evidence on which the jury rendered their verdict. It could not be so relied on, even though it should in terms purport to be a statement of “all the evidence in the cause,” as was the case in Brooke v. Young, 3 Rand. 16; for the reason stated by the court in that case, that “although the evidence stated in the bill might be all when it was sealed, there might be other important facts brought forward afterwards.” For these reasons, the supposed implied reference to the certificate in question could not justify us in regarding it as a certificate *772 of all the evidence in the cause. No reference could produce that effect which did not, in express terras, or by the clearest implication, show that such certificate was referred to and adopted, not merely as a statement of all the evidence given in at the time of its being made, but as a statement of all the evidence before-the jury at the time of rendering the verdict.
The question which it would seem most proper to consider ne.xt, is, whether there is such a record of the exceptions of the plaintiffs in error to the ruling of the court in respect to the instructions, as warrants us to pass upon the propriety of such ruling. There are three papers sent to us as constituting parts of the record, which purport to be bills of exceptions taken by the plaintiffs in error to opinions of the court given against them in the cause, to wit, a bill of exceptions to the ruling of the court, refusing certain instructions and giving others (the one immediately under consideration) ; a bill of exceptions to the opinion of the court “overruling the motion for a new trial, and a bill of exceptions to the judgment of the court overruling the motion in arrest of judgment.
The verdict of the jury was rendered on the 21st of November 1855. Immediately succeeding the entry of the verdict is the following: ‘ ‘And thereupon the defendants moved the court to set aside the said verdict and grant them a new trial herein. But because the court was not then advised of its judgment to be given in the premises, time was taken to consider thereof.” Immediately succeeding this is a statement by the clerk as follows: ‘‘The following is a bill of exceptions to an opinion of the court given against the defendants aforesaid, on the said 21st day of November 1855, but which was not received by the clerk till the 12th day of February 1856.” The bill of exceptions is then set out, commencing with the following caption: “Be it remembered, that on the trial of this cause, the counsel of the plaintiffs introduced the following evidence.” The bill proceeds to set out certain written statements of the admissions of the parties, letters, accounts, interrogatories, and answers thereto; and after so doing, states “and here the plaintiffs rested their case.” It proceeds then to recite that the defendants introduced certain evidence (setting it out) “and rested the case.” “The counsel for the defendants (in the language of the bill) then moved the court to instruct the jury as follows.” The instructions are set out, and the recital proceeds, “And the plaintiffs moved the court to instruct the jury as follows.” The instructions- are set out, “And the court (in the language of the recital) refused to give the instructions moved by the defendants and to give the instructions moved by the plaintiffs, but instructed the jury that,” &c. After stating the instructions given by the court, the bill concludes, “To which opinion of the court “refusing their said instructions, and giving the instructions aforesaid, the defendants except, and pray that this their bill of exceptions may be signed, sealed and reserved to them; which is done accordingly. ’ ’
Immediately succeeding the bill of exceptions is the following entry: “And now at this day of the same term last mentioned, to wit, Tuesday the 12th day of February 1856 (being the same day and year first herein mentioned), came again the parties aforesaid, by their attorneys; and thereupon the court having maturely considered the motion of the defendants to set aside the verdict of the'jury in this cause, and to grant them a new trial of the same, doth overrule the said motion. Whereupon the defendants moved the court to correct (which ought to be, doubtless, to arrest) its judgment upon the said verdict; which motion was also overruled.”
The judgment is then given, and at the foot of it is the following: “Memorandum. The defendants aforesaid, by their attorney, this day excepted to two opinions of the court given against them, and tendered their bills of exception thereto: and also tendered a bill of exceptions to an opinion of the court given against them on the 21st day of November 1855: which bills were reserved, signed and sealed by the court, and ordered to be made parts of the record in said cause. And the two first mentioned of said bills are in the words and figures following, to wit.” The bill of exceptions to the opinion of the court refusing to grant the new trial, and the bill of exceptions to the opinion overruling the motion in arrest of judgment, are then set forth.
It is proper to add here (what ought perhaps to have been stated before), that the transcript of the record is headed as follows: “Pleas before the Circuit court of the city of Richmond for the trial of civil causes, “held at the state courthouse in the said city, on Tuesday the twelfth day of February in the year one thousand eight hundred and fifty-six.”
We judicially know that the November term of the Circuit court aforesaid might continue for such a space of time as would include the 21st day of November 1855, and 12th day of February 1856. We find no difficulty, therefore, in construing the involved and apparently self-contradictory entry following the bill of exceptions, as meaning to indicate that the day on which the final judgment was rendered, to wit, the 12th day of February 1856, was the same with that, as of which the transcript is entitled, that being “the same day and year first herein (that is, in the record) mentioned;” and that said day was a day of the term at which the verdict was rendered, the said term being “the same term last mentioned” in the record.
From this view of the record, it seems to me that there exists no valid objection to the bill of exceptions, growing out of the time of its being received, sealed and made a part of the record. According to our practice, it is not necessary that a bill of exceptions should be tendered immediately *773 on the transpiring- or happening of the action of the court to -which a party excepts. It is true, that when the character of the exceptions is such that little delay is occasioned by the preparation of the bill of exceptions, it is sometimes immediately prepared and disposed of; and in such case, a memorandum of the transactions is usually made in the minutes of the proceedings of the day. But as in a great number, perhaps a majority of cases, serious delay and inconvenience -would result from stopping the progress of the trial to prepare bills of exceptions to the rulings of the court, a practice, sanctioned by long usage, has prevailed, for the counsel desiring to except to any opinion of the court given against them on the trial, simply to state "to the court that they intend to save the point, and ask the court to note the exception, and afterwards during the term to prepare the bill of exceptions, and tender it to the court for its signature. Such was the practice which prevailed under our law of 1819, which follows substantially the provisions of the statute of Westm. 2, 13 Edw. 1, ch. 31. I do not think that any such change in the law has been introduced by the 8th section of chapter 177 of the present Code, as requires us to declare that such a. practice is no longer to be allowed. The bill of exceptions in question having been tendered and signed not only at the same term at which the verdict and judgment were rendered, but at the time of the rendering of the judgment, was, it seems to me, clearly in time.
The important difficulty, however, in respect to the bill of exceptions here, arises not out of the time of its being tendered and sealed, but out of the fact that neither in the bill itself nor in the entry of its being made a part of the record, is there any distinct averment of the fact that the exception to the opinion of the court refusing the instructions, was taken at the time of the rendering of the opinion, or indeed at any time before the verdict was rendered.
The presence of this last mentioned fact is essential to entitle a party relying on a bill of exceptions, to claim any benefit from his bill. It is incumbent on him to show that he saved the point or took the exception in the manner already indicated, or in some more solemn form, either at the time when the opinion of which he complains was given, or at least before the verdict of the jury was rendered. In the absence of such showing, justice to his adversary would require that he should be held to have yielded to said opinion. It is not just or reasonable that he should be allowed to take his chance before the jury, and in the event of defeat, then to deprive his successful opponent *of the benefits of the verdict by an exception, which, if insisted on during the trial, might have been met and counteracted by the latter.
It seems to me, however, that the plaintiffs in error, notwithstanding the omission of the. record to state expressly and directly that the exception was taken at 1he trial, have yet shown, with satisfactory certainty, that such was the fact. Eor whilst neither the bill of exceptions nor the memorandum of its being made part of the-record, contains a positive averment that the exception was insisted on during the trial before the jury, they do not, in my opinion, when read together, amount to an averment inconsistent with the existence of such a fact. The most that can be said of the effect of the two statements taker», together, is that it leaves it somewhat in doubt whether such was or was not the fact,,A legal and satisfactory explanation of this doubt: in favor of the existence of the fact, I think, arises out of evidence afforded by other portions of the record, and certain presumptions springing from the very nature of the transaction.
We have seen that the memorandum at the foot of the judgment, in speaking of the bills of exceptions to the opinions of the court overruling the motion for a new trial, and the motion in arrest of judgment, says, in respect to them, that the defendants “this day excepted to two opinions of the court given against them, and tendered their bills of exception thereto;” but when it conies to speak of the bill in question, it says, “and also tendered a bill of exceptions to an opinion of the court given against them on the 21st of November 1855.” l<Yom the marked difference of the terms used in reference to the first two bills, from those used in reference to the bill in question, there arises an inference, little inferior in force to an express negative of the fact, that the exception to which the last bill refers was made at the time of the entry. Why say, in x’rcspect to the first two, that the defendants this day excepted, &c., and tendered their bills, &c., and of the bill in question, merely that they tendered a bill to an opinion given before, if there was not a purpose to convey the idea that the exception to said opinion was not taken on that day?
The last day preceding that mentioned in the record, is the day on which the trial was had and the verdict given ; and when we look to the bill of exceptions, we see that the defendants did except at some period of time: And it seems to be conceded, that if the bill in its conclusion had spoken in the past instead of the present tense; had used the terms “excepted and prayed,” instead of saying “except and pray;” that those terms, taken in connection with the memorandum aforesaid, and all the recitals of the bill, would have shown sufficiently that the exception was taken at the time of the ruling of the court in respect to the instructions.
I do not think that the mere circumstance that the party, in reciting the fact of his excepting to the opinion of the court, has adopted the present instead of the past tense, should work the important result of making the bill conclusive proof that the exception was not taken till after the ver- *774 ■diet. In drafting' the bill, the slightest inadvertence might cause the one expression to be used instead of the other. The bill of exceptions may have been prepared at the time of the trial, though not tendered to the judge for his signature till the time of the rendering of the judgment; and in such case, the language might have been very properly used.
We have seen that the verdict was immediately followed by a motion for a new trial; which the court took time to consider. The bill of exceptions in question may, though perhaps then ready, have been withheld to await the action of the judge on the motion *for a new trial, which, if granted, would dispense with the signing and recording the bill of exceptions. There is always a strong presumption that the judge would not sign a bill of exceptions to an opinion given on the trial, unless the exception was taken in time; and as the bill of exceptions here was filed at the time of the rendering of the judgment, when, as appears by the amendments of the record, the defendants in error were present bjr their attorneys, we have a still further presumption, and one of great force, in favor of the conclusion that the exception must have been taken at the proper time, and that all was rightly done in respect to the bill, arising from their failure to object to its being received and entered.
Tittle aid in determining the question under consideration is derived from a reference to the decisions of other states; as each state has moulded for itself, either by statute or the decisions of its courts, a practice in the matter of bills of exceptions, varying in a greater or less degree from the practice observed in any other state. The case of Harlow v. Humiston, 6 Cow. R. 189, however, seems to me to furnish strong persuasive authority in favor of the bill of exceptions in this case. In that case an exception was taken by the defendant below to a charge by the court to the jury. The bill of exceptions, after stating the charge, concluded thus: “The jury retired, and returned and delivered their verdict in favor of the plaintiff for fifty dollars damages. To all which charge the counsel for the defendant excepted.” By the laws and practice of Hew York it was necessary that the exception to the charge should have been taken before the verdict of the jury was rendered, and it was obvious that there was doubt, from the conclusion of the bill, whether the exception had been taken before or after verdict; and an objection to the bill was urged on that score. The objection in the appellate court was overruled, the chief *justice, Savage, in rendering the opinion of the court, remarking, “It is objected that the exception came too late, and that it is too general. We must presume it was taken in time; otherwise, the court would not have allowed it.”
I do not think that under the circumstances of this case we should violate any rule or incur any hazard of doing injustice to the defendants in error, by adopting a similar course here. A bill of exceptions, it is true, is a part of the record, and may not be contradicted by evidence extrinsic of the record. Still, it is not an essential portion of the regular and necessary history of the steps in a cause, its whole purpose being to bring into the record matters of which the account of the ordinary proceedings would otherwise take no notice. It is made a part of the record only at the instance of counsel; and the counsel and court concur in making it up. When, therefore, on comparing a bill of exceptions with the entry of its being received as part of the record, and other portions of the record, such a doubt arises as we have here, I think that the expressions out of which the doubt arises may be construed in reference to the circumstances shown by the record to have existed at the time the bill was tendered and received. The bill here having been tendered before or at the time of rendering the judgment, when, not only according to all presumption independent of the record, but also according to the averments of the. record, the defendants in error were present by attorney, I am of opinion that the presumptions arising from this state of facts, taken in connection with the other considerations already adverted to, justify and require such an interpretation of the ambiguous expx'essions in the record as will sustain the validity of the bill. In cases where the bills of exceptions to rulings at the trial are not tendered till at some day subsequent to that on which the final judgment is ^rendered, I think that a more rigid rule should be observed. In such cases, the record ceasing to afford any longer evidence of the continued presence of the opposing party or his counsel, I think, that a party, who may have thus delayed to tender his bill, should be held to show, by averments of the record, free from reasonable doubt, that the exception was taken at the time of the ruling of the court excepted to, or at least before the finding of the verdict by the jury.
The rulings of the court in regard to the instructions being thus, as I conceive, properly before us for review, I shall proceed briefly to consider them. And it seems to me that the court did not err in refusing to give the first instruction prayed for by the plaintiffs in error. The declaration did not charge that they had been guilty of any want of diligence; did not impute to them any negligence in the transmission of the message; and there was no question of negligence before the jury.
I think that the court also properly refused to give the second instruction asked by the said plaintiffs in error. If the company, by reason of their having sent to Messrs. Smith & Co., the factors of the defendants in error, a message to purchase a larger quantity of cotton than the quantity mentioned in the message which the company were authorized to transmit, had rendered themselves liable to relieve the defendants in error of any excess of cotton purchased *775 by their factors, in pursuance of the first mentioned message, no reason is perceived why the company was not equally bound to relieve them of all loss or obligation by them incurred on account of the accustomed and reasonable commissions of their factors, charged for effecting the purchase. And upon the supposition, therefore, that Smith & Co. would have been bound to accept, in behalf of their principals, an offer by the companjq oran agent of the corn-pany, to pay all the costs and *charges of the purchase of such excess, including the commissions aforesaid, on receiving such excess, or else release the company from any responsibility the said company were under to the defendants in error for having transmitted a wrong message, they were not bound to accept any offer of the kind which did not include the commissions aforesaid.
In respect to the rulings of the Circuit court in refusing to give the third instruction asked by the plaintiffs in error, and in giving the instructions which it did give, it was, I think, the duty of the defendants in error, as soon as thej' were apprised of the mistake or alteration in their message, and of the purchase, by their factors, of the two thousand and seventy-eight bales of cotton, if they intended to hold the company responsible for the excess of cotton over the five hundred bales, to have notified the company of such intention; to have made a tender of such excess to the company on the condition of its paying the price and all the charges incident to the purchase, and to have also further notified the company, that in case of its refusal to accept said tender, and comply with its conditions, they would proceed to sell such excess at Mobile, and after crediting said company by the net proceeds, would look to it for the difference between the amount of such proceeds and the cost of the excess, including all proper charges: and on the failure of the company, after notice, to accede to their offer, they ought to have proceeded to act accordingly. I do not think that the duty of the defendants in error, upon such failure of the company, in respect to the disposition of the five hundred bales of the excess, two hundred and eighty-four bal.es of which the testimony tends to show was on shipboard, and two hundred and sixteen under a contract of affreightment, varied substantially from their duty in this regard respecting the one thousand and seventy-eight bales *which they proceeded to sell at Mobile. The principles and rules regulating the subject, required, as I conceive, a sale of said five hundred bales also at the nearest market (Mobile), tobe taken by the purchaser or purchasers as it stood, namely, two hundred and eighty-four bales as on shipboard, and two hundred and sixteen bales as under a contract of affreightment.
The defendants in error had no right Lo subject the company to the hazards attendant upon sending the cotton to a foreign market. The loss (if any) which they bad incurred on the said five hundred bales at the time of the refusal of the company to relieve them of the excess of cotton purchased, was the difference between the cosl, including all proper charges, and its then present nei value. Notwithstanding the refusal of the company to relieve them of the excess, or to have any thing to do with it, they had no right to subject the company to the hazards of any greater loss. These views are, I think, fully sustained by the principles to be deduced from the cases of Sands & Crump v. Taylor & Lovett, 5 John. R. 395; Cornwal v. Wilson, 1 Ves. sen. R. 509; Kemp v. Pryor, 7 Ves. R. 237; Chapman v. Morton, 11 Mees. & Welsb. 533; and the doctrines on the subject stated in Paley on Agency, ch. 1, § 7. The only doubt on the subject, arising from the consideration of these authorities, is whether the defendants in error, notwithstanding their notice to the company of their purpose to send on the five hundred bales, and hold it responsible for the loss that might arise, and the company’s refusal to take it off their hands, have not, by sending the cotton to River-pool instead of selling at Mobile, lost all right to recover of the company for the loss which might have been sustained on the said five hundred bales in case it had been sold in Mobile. I do not think, however, that if the defendants in error sent on the cotton, with the intention not of taking to themselves the profits *which might arise from a sale of the said five hundred bales in Riverpool, but of indemnifying themselves out of the proceeds of sale to the extent of the costs and obligations incurred by them by the purchase, they thereby, in the event of a still greater loss growing out of sending the cotton to Riverpool, lost any right they may have had to recover of the company for the loss that would have been sustained had the cotton been sold at Mobile, ou'the refusal of the company to relieve them of the excess.
On the other hand, if the defendants in error sent the five hundred bales aforesaid to Riverpool for purposes of speculation, with the intention of taking to themselves the profit in the event of a profit, and in the event of a loss, of visiting the loss on the company, the case in respect to said five hundred bales would, I think, be different. They could not claim all the benefits of a complete ownership of the property, and in case of a loss, demand of the company to make good the loss. Parlies thus situated, if they do not abandon the property, cannot, in case they mean to sue for damages, go further, in dealing with the property retained by ihem, than to look to it as in the nature of a pledge, which may he sold for their indemnity. And it seems to me, therefore, that the purposes and objects of the defendants in error in forwarding the five hundred bales aforesaid to Riverpool, was a matter proper to be submitted to the jury for their consideration, in passing upon the damages in respect of the five hundred bales. Whilst, therefore, *776 I think that the Circuit court did right in refusing to give the third instruction prayed for by the company as asked, I think . it ought, in lieu of said instruction, to have modified the instructions which it did give, in accordance with the foregoing views.
There was, as has been, already stated, no issue of negligence on the part of the company in transmitting *the message, in the case; and the instructions of the Circuit court, so far as they make the right of the defendants in error to depend in any manner on its appearing to the jury that the message was altered by the negligence of the company, were, I think, erroneous. On the first view of the case I was strongly of the impression that the questions, whether the jury might or might not regard the company as a common carrier, and might or might not infer, from the facts in the case, such an implied contract as the law attributes to common carriers, were properly before us in passing upon the instructions. But upon further reflection, I am of the opinion that they are not. If the plaintiffs in the action desired to get an instruction from the court on these matters, they ought to have stated, hypothetically, the evidence from the belief of which the jury were to ascertain that the company was a carrier, and from which they were to infer the implied contract aforesaid, and to have set out in the instructions the character of such implied contract. This was not done. And there being in the ca-se no instructions asked for so framed as properly to elicit from the Circuit court any expression of opinion on said questions, it seems to me that the Circuit court, in saying to the jury, that “if they believe from the evidence that the message of the plaintiffs directing the purchase of five hundred bales of cotton, was delivered to the defendants to be transmitted, and they undertook to transmit it for the hire of one dollar and seventy-nine cents,” and should also believe the other facts hypothetically stated as the grounds of a recovery, the defendants were liable, is, in respect-of the contract and undertaking of the compan3’-, to be understood as if it had'said to the jury, that if they believed that the company undertook to transmit the message accurately and correctly for the hire aforesaid, and should also believe the other facts aforesaid, *the company was liable. Under this view of the instructions, the parties were left free to contest the questions aforesaid before the jury, not because of a liberty so to do, given by the instructions, but because the instructions did not in any manner pass upon them. So understanding the instructions, I do not think that there was any error in them in said particular. And being of the opinion that the questions aforesaid are not properly before' us, as arising either out of the instructions asked or the instructions given, I decline expressing any opinion upon them.
These views of the case, without any .more special application of them to the | rulings of the Circuit court upon the in-sti'uctions, will serve to indicate with sufii-cient certainty the particulars wherein, in my opinion, the said court has erred in said rulings. And because of such errors, I think that the judgment should be reversed, the verdict set aside, and the cause remanded for a new trial, in accordance with the principles herein declared; with liberty to the parties to amend their pleadings, if so advised.
UEE, J-,
thought that it did not satisfactorily appear, that the exception to the opinion of the- court refusing the instructions asked, and giving other instructions, was taken before the jury retired to consider of their verdict. On the merits, he concurred in the opinion of Daniel, J.
AEEEN, P., and MONCURE, J., concurred in the opinion of Daniel, J.
The judgment was as follows :
It seems to the court, that the Circuit court did not err in overruling the motion of the plaintiffs in error in arrest of judgment.
And it appearing to the court, that there is neither *a certificate of all the facts nor a certificate of all the evidence in the cause, it seems further to the court, that the plaintiffs in error have not sustained their allegations, assigning as cause of error that the said Circuit court erred in overruling their motion to set aside the verdict and grant them a new trial, on the ground that the verdict of the jury was contrary to the evidence.
And it seems further to the court, that the said Circuit court did not err in refusing to give the first instruction prayed for by the plaintiffs in error, nor in refusing to g'ive the second instruction prayed for by said plaintiffs in error.
It seems further to the court, that the said Circuit court did not err in refusing to give to the jury so much of the third instruction prayed for by the said plaintiffs in error as asked the said Circuit court to instruct the jury, that “if the jury shall believe from the evidence that when the one thousand bales of cotton shipped bjr the factors of the plaintiffs to a foreign market, it was by them shipped on account and for the plaintiffs, with a view of taking advantage of the fluctuations of the market; and if they shall from the evidence further believe, that if a large profit instead of a loss had been realized on the quantity so shipped, they would not have accounted, and in point of fact did not intend to account to and with the defendants for the profits, then and in that case they must find for the defendants.”
But it seems to the court, that the said Circuit court ought to have given to the jury, in lieu of so much of said instruction, an instruction to the effect, that if they should believe from the evidence that when the one thousand bales of cotton was forwarded by the factors of the defendants in error to a foreign market, it was by them forwarded on account of and for the said *777 defendants in error, with a view, on the part of *the said defendants in error, of taking advantage of the fluctuations in the market; and if they should further believe from the evidence, that if a profit instead of a loss had been realized on the quantity so forwarded, the defendants in error would not have accounted, and in point of fact did not intend to account to and with the company for the profits, then and in that case the defendants in error were not entitled to recover for any loss sustained on the quantity so forwarded.
It seems further to the court, that the said Circuit court did not err in refusing to give to the jury the residue of the said third instruction. But it seems to the court, that the said Circuit court ought, in lieu of said residue of said third instruction, to have instructed the jury, that in case they should find for the said defendants in error, they should, in fixing the amount for which to render their verdict, ascertain the Joss sustained on the one thousand and seventy-eight bales sold at Mobile, by deducting the net proceeds of such sale from the cost of the said one thousand and seventy-eight bales, and also find for what sum the five hundred bales (the residue of the one thousand five hundred and seventy-eight bales of excess) would have sold at Mobile at public sale, immediately before the two hundred and sixteen bales, a part of the said five hundred bales, was delivered on shipboard, to be taken by the purchaser or purchasers as it then stood, to wit, two hundred and eighty-four bales as on shipboard, and two hundred and sixteen bales as not then shipped, but under a contract of affreightment, subject to the contract for freight, and deduct said sum from the cost of the said five hundred bales, including all proper expenses and charges at Mobile, and in putting the cotton on shipboard, but not including the charge of freight on the said five hundred bales from Mobile to Eiverpool; and add said balance to the amount ascertained '"as aforesaid as the loss on the one thousand and seventy-eight bales; and that said aggregate, together with interest from such day as the jury should think right, to the day of rendering their verdict, should constitute the sum for which to render their verdict.
It seems to the court further, that the Circuit court erred in the instructions which it gave to the jury, in so far as it made the right of the defendants in error in any measure dependent on its being shown that their message was altered by the negligence of the company, it seeming to the court that there was no question of negligence on the part of said company in issue before the jury.
And it seems further to the court, that there were no instructions jjrayed for so framed as properly to elicit from the Circuit court any instructions of the said court as to whether the company were to be regarded as common carriers, or whether the jury might infer a contract of any character from the nature of the calling of said company.
And it seems to the court, that the instructions of the said Circuit court should not be construed as indicating any opinion of the said court on said questions, or as intending in any manner to affirm or deny the right of the defendants in error to recover upon such an implied contract; but that the said Circuit court, in saying to the jury that if they believed that the company undertook to transmit the message, and should also believe the other facts liy'-pothetically stated in said instructions as the grounds of the recovery, that then the company were liable, is to be understood as if it had said to the jury that if they believed that the company undertook to transmit the message accurately and correctly, and should also believe the other facts just indicated,that then the company' were liable.
It seems to the court, that under the said instructions the parties were left free to contest the questions *in respect to the calling of the company and the implied contract aforesaid, before the jury, not because the liberty to do so was expressly given, or involved in the instructions aforesaid, but because the Circuit court had not given any opinion on said questions.
And it appearing to the court, that said questions are not presented properly to this court for its decision, either by the instructions given or the instructions asked on the trial, it seems to the court improper to express any opinion upon said questions. And construing the instructions given by the Circuit court as just indicated, it seems to the court that said instructions are erroneous, so far and so far only as they are in conflict with the principles herein already declared.
And as, because of the errors in the rulings of the said Circuit court in respect of the instructions asked and of the instructions given, the judgment must be reversed, it becomes unnecessary for the court to consider whether the said Circuit court erred or not in overruling the motion of the plaintiffs in error to set aside the verdict and grant them a new trial, on the ground of newly discovered evidence.
And because of the errors which have been pointed out, it is considered by the court that the judgment of the said Circuit court be reversed, &c., with costs; and it is ordered, that the verdict of the jury be set aside, and the cause remanded for a new trial to be had in accordance with the principles herein declared, with liberty to the parties to amend their pleadings, if so advised.
Judgment reversed.